## MONTGOMERY COUNTY, MARYLAND *v.* OLD FARM SWIM CLUB, INC. ET AL.

[No. 140, September Term, 1973.]

*Decided January 8, 1974.*

*Motion for reconsideration or rehearing filed February 7, 1974; denied February 25, 1974.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Martin J. Hutt, Assistant County Attorney*, with whom were *Richard S. McKernon, County Attorney, Alfred H. Carter, Deputy County Attorney*, and *Richard E. Frederick, Assistant County Attorney*, on the brief, for appellant.

*R. Edwin Brown*, with whom were *Rex L. Sturm* and *Brown & Sturm* on the brief, for appellees.

SINGLEY, J., delivered the opinion of the Court.

Montgomery County, Maryland (the County) has appealed from a judgment of $25,400.00 with interest and costs entered on a jury's inquisition in a condemnation case in the Circuit Court for Montgomery County. For reasons to be developed later, the award appears to have consisted of $3,400.00 for the property taken,[1] and $22,000.00 in consequential damages. The parties had stipulated that there was a public necessity for the taking and that the property had been taken for a public purpose.

The County assigns three reasons why the judgment should be reversed, but we need consider only one, that the trial court committed prejudicial error in admitting, over

1. This was the amount deposited with the clerk of the court in pursuance of the fast-taking procedure authorized by Maryland Constitution, Art. III, § 40A [Maryland Code (1957, 1972 Repl. Vol.)], and Montgomery County Code, § 49-50 (1973).

the County's objection, expert testimony as to the unit value of certain trees which were destroyed in connection with the taking of a slope easement.

Incident to the improvement of Montrose Road, the County found it necessary to subject 7,162 square feet of the property owned by Old Farm Swim Club, Inc. (the Swim Club) to a revertible slope easement. In a petition filed on 30 October 1970, the County alleged that it had been unable to acquire the property through negotiation and sought to acquire the property by condemnation.

When the case came on for trial in April of 1973, Philip R. Lamb, the County's expert witness, testified that the property which was actually taken for slope easement purposes, 6,768 square feet, had a value of $1.00 per square foot at the time of the taking, and had sustained 50% damage, which he rounded out to $3,400.00. Mr. Lamb was of the opinion that there was no consequential damage to the Swim Club's remaining property. Mr. Lamb was the County's only witness, other than James Ellis, Jr., the design engineer, who had described the work undertaken in connection with the Montrose Road project.

The Swim Club's first witness was Ray Gustin, who qualified as an expert horticulturist. He testified that he had, prior to the taking, made a survey of the trees located on the slope easement. Over objection, he was permitted to testify that he had found 28 major trees, all having a caliper of more than four inches, which he identified by specie, for the purpose, he said, of putting "a monetary value" on them. He was permitted, over continuing objection, to describe the formula used by the International Shade Tree Conference as a basis for valuation, and to say that through the application of the formula, he valued the 28 trees at $11,323.34.

The following excerpt from Mr. Gustin's testimony on cross-examination is the underpinning of the County's objection:

"Q. Have you done any evaluation of these trees in terms of their enhancement to the Old Farm Swim Club?

"A. I don't believe I got your question.

"Q. Have you ever done an evaluation of the land value of the Old Farm Swim Club with these trees on it?

"A. I told you I did not. I am not a land value expert."

\* \* \*

"Q. If I can summarize, what you did for the Old Farm Swim Club was to go out and survey twenty-eight trees and make a determination as to their value as a separate entity separate and apart from [the] value of [this] land?

"A. Separately and collectively.

"Q. And collectively, but did not have any relationship to the value of land?

"A. That is correct."

Charles R. Wolfe, the Swim Club's expert, agreed with Mr. Lamb that the value of the property taken was $3,400.00, but was of the opinion that the fair market value of the Swim Club's property, before the taking, was $295,000.00, and had been depreciated by 15% as a result of the condemnation. In short, Wolfe testified that the Swim Club had suffered consequential damages of $44,250.00, together with $3,400.00, the fair market value of the property taken, or total damages of $47,650.00. *See* Maryland Code (1957, 1973 Repl. Vol.) Art. 21, § 12-105(b).[2]

The Maryland cases construing the predecessors of section 12-105, and those decided under the common law, are in accordance with the general rule regarding the propriety of permitting the award of consequential damages. Where part of a landowner's property is appropriated by eminent domain, "consequential damages to the remainder of the tract may be considered in the assessment of the award," *State Roads Comm'n v. Hance*, 242 Md. 137, 139, 218 A. 2d 33, 35 (1966); *State Roads Comm'n v. Adams*, 238 Md. 371,

---

**2.** Code (1957, 1971 Repl. Vol.) Art. 33A, § 5, which was repealed by Chapter 349, § 1 of the Laws of 1972 and replaced by Code (1957, 1973 Repl. Vol.) Art. 21, § 12-105 (effective 1 January 1973), was the statute in effect at the time the property was condemned by the County.

376-77, 209 A. 2d 247, 249 (1965); *Johnson v. Consolidated Gas, Elec. Light & Power Co.*, 187 Md. 454, 469-70, 50 A. 2d 918, 925-26 (1947) (quoting from *Realty Improvement Co. v. Consolidated Gas, Elec. Light & Power Co.*, 156 Md. 581, 588-89, 144 A. 710, 713 (1929)); *Brack v. Mayor & City Council of Baltimore*, 125 Md. 378, 381, 93 A. 994, 995 (1915); *see also Big Pool Holstein Farms, Inc. v. State Roads Comm'n*, 245 Md. 108, 113, 225 A. 2d 283, 285 (1967); 4 Nichols, Law of Eminent Domain § 14.1[2], at 494 (3d rev. ed. 1962).

Returning to the admissibility of the Gustin testimony, the majority rule generally provides that "[a]ll of the facts and circumstances bearing upon the condition and nature of the land as a whole and its possible use are proper as elements bearing upon value, but separate appraisements of the different elements constituting the whole are improper," *United States v. Meyer*, 113 F. 2d 387, 397 (7th Cir.), *cert. denied*, 311 U. S. 706 (1940). This standard is stated in greater detail in 4 Nichols, *supra*, § 13.2, at 402-03:

> "When a tract of land taken by eminent domain contains ore, stone, coal, sand, gravel, peat, loam, oil, gas or other valuable deposits constituting part of the realty, the existence of these features can be taken into consideration in determining the compensation so far as they affect the market value of the land. The same rule would be applicable where the land is covered with growing crops or trees capable of being converted into lumber. But even in such case, the market value of the land as land remains the test. Hence, there can be no recovery for any of the foregoing elements valued separately as saleable items additional to the value of the land." (Footnotes omitted.)

*See Smith v. State Roads Comm'n*, 257 Md. 153, 158-59, 262 A. 2d 533, 535-36 (1970) (sand and gravel deposits); *State Roads Comm'n v. Creswell*, 235 Md. 220, 229-30, 201 A. 2d 328, 333 (1964) (presence of gravel); 4 Nichols, *supra*, § 13.21, at 404-06 (vegetable growths).

In eminent domain proceedings, a landowner cannot, in the usual case,[3] directly recover damages for the loss of trees on the condemned property. Consideration of the value of the trees must be limited to the extent to which they enhance the value of the property as such, and they may not be valued apart from the value of the land, *White v. Natural Gas Pipeline Co.*, 444 S.W.2d 298, 301 (Tex. 1969); *County of Niagara v. Bagwell*, 36 App. Div. 2d 196, 198, 319 N.Y.S.2d 629, 632 (4th Dep't 1971); *Zaremba v. State*, 29 App. Div. 2d 723-24, 286 N.Y.S.2d 379, 381 (3d Dep't 1968); *In re County of Suffolk*, 70 Misc. 2d 232, 239, [In re County Park at Great River,] 333 N.Y.S.2d 686, 694 (Sup. Ct., Suffolk Co. 1972); *see also Peoria, B. & C. Traction Co. v. Vance*, 234 Ill. 36, 38, 84 N. E. 607, 608 (1908) (dictum: would be improper to prove value of trees independent of land).

As Judge Finan, speaking for the Court in *Smith, supra* (where the trial court was held to have properly excluded testimony regarding the value of sand and gravel deposits separate and apart from the value of the land), observed:

> "We would add that in our opinion the use of the multiplication method would have undue attraction for the jury. They would tend to focus their attention on a pat formula proposed for arriving at just compensation to the exclusion of other important and less speculative evidence of fair market value." 257 Md. at 161, 262 A. 2d at 537.

This is precisely the difficulty here. Mr. Gustin readily conceded that the trees could not be moved.[4] As a consequence, they had no readily ascertainable market value. The theoretical value which he proposed to attribute to them had an amorphous quality, not only likely to confuse the jury, but completely obscuring the true test — the extent

---

**3.** *See* note 4 *infra.*

**4.** Trees constituting nursery stock may be valued separately from the value of the land. *See* Diocese of Buffalo v. State, 24 N.Y.2d 320, 329-30, 248 N.E.2d 155, 160, 300 N.Y.S.2d 328, 335-36 (1969) (direct compensation permitted for loss of 5,000 pine trees planted for nursery purposes); State Highway Comm'r v. Green, 5 Mich. App. 583, 589-90, [Mackie v. Green,] 147 N.W.2d 427, 430 (1967) (unit valuation of Christmas tree stock permitted).

to which the trees enhanced the value of the property taken, an element to be taken into account, as we assume it was, in the experts' opinion of the value of the property condemned. *Cf. Supervisor of Assessments v. Bay Ridge Properties, Inc.*, 270 Md. 216, 310 A. 2d 773 (1973) (enhancement concept as applied to land appraisal for property tax purposes).

Nor can we hold in this case that the error in admitting the Gustin testimony (which was wholly inadmissible) was rendered harmless when the trial judge, after admitting the testimony over objection, addressed the jury:

> "Ladies and gentlemen, so the testimony of this last witness is completely clear to you, he was received as a horticultural expert and not as an expert in appraising property. His testimony was received with respect to the subject of the trees on the property that are no longer there; but your determination is not as to value of the individual trees, but only to determine the fair market value before and after the taking and that's why Mr. Gustin's testimony was received."

Even the statement at the conclusion of the court's charge could not redress the error:

> "Ladies and gentlemen of the jury, counsel wanted me to say this to you. I may not have made it completely clear. In connection with this question of trees, you cannot put any dollar value on the trees as such. That tree testimony, as I told you yesterday, was permitted in connection with the claim of the defendant [for] a damage which is called a consequential damage to whole by virtue of the loss of these trees, that is, the question of sound and esthetic value, etc. But you do not put any dollar figure on that. That is just part of the testimony in determining the before and after value of this land."

We think the admission of the testimony was clearly prejudicial to the County and warrants a remand for a new trial.

Although we have not considered the other two points made by the County, we are inclined to observe that the court's refusal to sequester witnesses as contemplated by Maryland Rule 536 is not reversible error absent a showing of prejudice, *In re Fletcher,* 251 Md. 520, 248 A. 2d 364 (1968), *cert. denied,* 396 U. S. 852 (1969), and none was shown here. As to the second point, it seems to us that the learned trial judge's instruction as to consequential damages, taken as a whole, correctly explicated the law. As regards his comment that attempts to reach a negotiated settlement were unsuccessful, this was no more than a repetition of a recital of that fact contained in the County's petition, which had been admitted by the Swim Club's answer.

> *Judgment reversed; case remanded for a new trial; costs in this Court to be paid by the County.*