STATE OF MARYLAND *v.* WALTER P. RICE ET UX.

[No. 475, September Term, 1974.]

*Decided February 19, 1975.*

The cause was argued before THOMPSON, MOYLAN, DAVIDSON and MASON, JJ.

*Carl Harrison Lehmann, Special Attorney,* with whom

632

were *Francis B. Burch, Attorney General* and *Nolan H. Rogers, Special Assistant Attorney General,* on the brief, for appellant.

*John C. Joyce,* with whom were *F. Robert Troll, Jr.* and *Duckett, Orem, Christie & Beckett* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

Walter P. Rice and Julia J. Rice, his wife, filed suit in the Circuit Court for Prince George's County against the State of Maryland for trespass. They recovered a verdict of $17,500 which the State apparently considers to be excessive. The only issues before us, however, involve the construction of a statute waiving the State's sovereign immunity and the proper measure of damages.

*I Demurrer and Preliminary Motion*

In their Declaration the Rices alleged:

"During the year 1972 and at present, the plaintiffs own in fee simple the improved real property described as Lot 2, Kidmore Park, Prince George's County, Maryland, known as 6825 Patterson Street, Riverdale, Maryland; that on or about October 24 and November 7, 1972, and April 6, 1973, engineers, surveyors, assistants and other agents, servants or employees of the State of Maryland acting within the scope of their authority, came upon said property without the prior knowledge or consent of the plaintiffs, and damaged or destroyed a large number of valuable trees, shrubs and plants which had been purchased, planted, relocated and cultivated by the plaintiffs for purposes of ornament, screening and landscaping of their home property; that as a result of such trespasses and the conduct of the defendant, its agents, servants or employees, the plaintiffs have suffered substantial damages.

"Wherefore, pursuant to Article 21, Section

12-112(c) of the Maryland Code (1973 Repl. Vol.) the plaintiffs demand judgment against the defendant in the sum of $50,000.00 plus costs."

The State responded by filing a "Motion Raising Preliminary Objection and Demurrer" which was overruled by the trial court. Both the Motion and the Demurrer were based upon a claim of sovereign immunity.[1] Md. Code, Art. 21, § 12-112 [2] provides as follows:

"(a) *Right of entry; right to set stakes, etc.* — Civil engineers, land surveyors and their assistants acting on behalf of the State or of any of its instrumentalities or of any body politic or corporate having the power of eminent domain have the right:

(1) To enter upon any private land to make surveys, to run lines or levels, or to obtain information relating to the acquisition or future public use of the property or for any governmental report, undertaking, or improvement, and

(2) To set stakes, markers, monuments, or other suitable landmarks or reference points where necessary.

(b) *Order to permit entry.* — If any civil engineer, surveyor, or assistant to a civil engineer or surveyor is refused permission to enter or remain upon any private land for the purposes set out in subsection (a) hereof, any such person, or the State or its instrumentality, or the body politic or corporate upon whose behalf such person is acting may apply to a law court of the county in which the property or any part thereof is located for an order directing that such person be permitted to enter upon and remain upon such land to the extent necessary to carry out the purposes authorized by this section. Any person having knowledge of such order

---

1. Although the Motion pointed out the failure of the statute to specify the measure of damages, we do not see its relevancy on the question of preliminary objection or demurrer.
2. Now covered by Md. Code, Real Property, § 12-111.

who obstructs any civil engineer, surveyor, or assistant to a civil engineer or surveyor who is acting under authority of such order may be punished as for contempt of the court.

(c) *Damage to or destruction of property.* — If any civil engineer, surveyor, or assistant to a civil engineer or surveyor who has entered upon any private land under the authority of this section or of any court order passed pursuant thereto. damages or destroys any real or personal property thereon, the owner of such property shall have a cause of action for such damages against such civil engineer, surveyor, or assistant and against the State, its instrumentality, or the body politic or corporate upon whose behalf the person inflicting such damage was acting."

The State argues that the above statute applies only in cases where the entry is made with the owner's permission or under a court order. The argument is difficult to answer only because it is insubstantial. The statute on its face authorizes the State's agents to enter in subsection (a) (1) and says nothing about the permission of the owner. Subsection (b) provides that upon objection by the owner, the proper authorities may obtain a court order authorizing entry for the purpose of surveying. Subsection (c) then provides that if entry is made under the "authority of this *section* or of any court order passed pursuant thereto," (Emphasis added) and damages result, the landowner shall have a cause of action against the State. We hold the entry was alleged to be under § 12-112 and thus the demurrer and the preliminary objection were properly overruled.

Citing *Hooper v. City of Baltimore,* 12 Md. App. 464, 475 (1859) and *Whitt v. Dynan,* 20 Md. App. 148, 315 A. 2d 122, 130 n. 12 (1974), the State further argues that the statute is in derogation of the common law and therefore must be strictly construed. Although the statement is sound, that does not mean the plain and obvious language of the legislature is to be overlooked particularly where such a

construction would lead to an absurd result. *Chillum-Adelphi Volunteer Fire Department, Inc. v. Prince George's County,* 269 Md. 486, 491, 307 A. 2d 481 (1973); *Blocher v. Harlow,* 268 Md. 571, 584-585, 303 A. 2d 395 (1973).[3]

## II Damages

The State next argues that the trial judge committed error in admission of evidence as to replacement costs of the trees and in refusing to instruct the jury that the costs were irrelevant in determining damages.

There was evidence from which the jury could have found: The Rices purchased the property in 1944 for their personal residence. It was an open field and contained only three large trees. Mr. Rice, a nurseryman, over the years planted many trees and shrubs on the property. Initially this was done for business convenience so Mr. Rice could furnish the trees and shrubs without having to purchase them from a nursery. Approximately twenty years later an apartment complex was constructed adjacent to the Rices' property. Mr. Rice decided he would permit the trees and shrubs in the area facing the apartments to remain undisturbed in order to screen his home from the apartments and to preclude others from using his property as a thoroughfare.

On October 24, 1972, a crew from the Maryland State Department of Transportation entered the Rices' property and cut a path through the trees varying from 10 to 20 feet in width and 100 yards in length. On the same day the Rices determined the types of trees and shrubs that had been cut and their height and caliber. On November 7, 1972 and on April 6, 1973, a survey crew from the State of Maryland again returned to the Rice property and cut further trees and shrubbery. No prior notice was received by the Rices on any of the three occasions and they never gave the State

3. The history of the statute was reviewed by the Court of Appeals in Mackie v. Mayor and Commissioners of the Town of Elkton, 265 Md. 410, 290 A. 2d 500 (1972) also cited by the State, in which it was observed that subsection (c) was added by Section 1 of Chapter 52 of The Laws of Maryland of 1963. In that case, however, the Court was concerned with the circumstances under which the Court could order the landowner to permit the entry and not with the question of a suit for damages after the entry had been made. The case does not bear upon the problem before us.

permission to come on the property. The Rices claimed that as a result of the destruction, the screening effect was destroyed and the noise level significantly increased. An expert nurseryman (other than Mr. Rice) testified that in his opinion the replacement costs of the destroyed trees and shrubs was $18,019.35 and the cost of replanting was $9,000 — a total replacement cost of $27,019.35. There was evidence that the large majority of the trees cut by the State Roads Commission were not native wild-growth trees but were planted.

Employees of the State Department of Transportation acknowledged that they cut down the trees and shrubs on the Rices' property in October, 1972, without having obtained their permission, for the purpose of running a survey site line. A real estate expert testified that the difference in the fair market value of the Rices' property before and after the cutting of the trees and shrubs was $100. He estimated that the value of the property for building lots was $56,000 both before and after the cutting and thus arbitrarily assigned a nominal difference of $100.

To support its argument that the trial court erred and failed to instruct the jury that the replacement cost should be disregarded in arriving at a verdict, the State cited two condemnation cases: *Montgomery County v. Old Farm Swim Club,* 270 Md. 708, 313 A. 2d 458 (1974) and *Smith v. State Roads Commission,* 257 Md. 153, 262 A. 2d 533 (1970) which held that in evaluation of property for the purposes of condemnation, the unit value of trees or gravel should not be admitted into evidence although those factors were, of course, relevant for the appraiser's use in arriving at a fair value of the property. It also cites *Big Pool Holstein Farms, Inc. v. State Roads Commission,* 245 Md. 108, 225 A. 2d 283 (1967) and *City of Baltimore v. Concord Baptist Church,* 257 Md. 132, 262 A. 2d 755 (1970), which are also condemnation cases in which the State alleges that the Court strained the law in order to preclude windfall compensation to the owners of property being condemned.

We do not think condemnation cases are appropriate authorities to apply in the instant case. In the first place the State took no property from the Rices but simply inflicted

damage thereon. In the second place, there is nothing to indicate that in providing that property owners could bring suit for damages in Md. Code, Real Property § 12-111 (c) the legislature intended that the State would not be liable in the same manner as a private individual. This law has been firmly settled by the Court of Appeals in two relatively recent cases: *Regal Construction Company v. West Lanham Hills Citizen's Association, Inc.,* 256 Md. 302, 260 A. 2d 82 (1970) and *Samson Company v. Brusowankin,* 218 Md. 458, 147 A. 2d 430 (1958) which were discussed and applied by this Court must recently in *Withers v. Ferrero Construction Company,* 21 Md. App. 550, 320 A. 2d 576 (1974). The rule is most succinctly set out in *Regal Construction Company v. West Lanham, supra* at 305:

> "It is no longer open to question that the Maryland rule is that damages may be measured in cases of this sort at the plaintiff's election either by the loss of value which results from the harm, or by the cost of restoration, subject to the limitation that if cost of restoration is disproportionate to diminution in value, then damage will be measured by the difference in value before and after the harm unless there is a reason personal to the owner for restoring the original condition. Once a reason personal is found, the measure of damages is the cost of restoration, *even though this may be greater than the entire value of the property."* (Citations omitted. Emphasis added.)

It is apparent in the instant case there was evidence to support a finding that there was a reason personal to the owners for restoring the property to its original condition. There was testimony that it was practical to do so and thus the trial court applied the proper measure of damages even though, had the entire number of trees on the property been cut, the cost of restoration would have greatly exceeded the value of the property.

*Judgment affirmed.*
*Appellant to pay the costs.*