POTOMAC ELECTRIC POWER COMPANY *v.*
ALFRED H. SMITH ET AL.

[No. 97, September Term, 1977.]

*Decided October 19, 1977.*

The cause was argued before MOYLAN, MENCHINE and DAVIDSON, JJ.

*Hal C. B. Clagett,* with whom were *Geoffrey D. Cant* and *Sasscer, Clagett, Channing & Bucher* on the brief, for appellant.

*Ronald A. Baradel,* with whom were *Hartman & Crain* on the brief, for appellees.

MENCHINE, J., delivered the opinion of the Court.

Potomac Electric Power Company (condemnor) filed a petition for the condemnation of certain lands of Alfred H. Smith and Mary W. Smith, his wife, (owners)[1] for the construction, operation and maintenance of electric power and energy transmission lines.

Owners' property prior to the taking comprised 26.788 acres of land in Prince George's County. A parcel of 6.873 acres of that land, consisting of a bisecting strip 350 feet wide traversing the land, was to be acquired in fee simple. Along both sides of the fee simple strip an easement 75 feet wide was to be acquired for cutting, trimming and removing trees and brush.

The bisecting strip divided the remaining land of owners into two severed parcels. One, a parcel comprising 1.9 acres lying to the west of the taking, was severed without road access. The second, comprising 15.215 acres, lies to the east of the taking, its access unaffected.

The geological characteristics of the land and the differing views of witnesses respecting the effect thereof upon its fair market value are essential factors to which consideration must be given in a resolution of the subject dispute. We shall, accordingly, summarize the evidence relating thereto to set the stage for our discussion of the legal issue.

Owners' land carried, as a non-conforming use, a lawful right to mine sand and gravel. All necessary permits for the exercise of that lawful right were extant at the time of the filing of the petition to condemn and the land then was being utilized for that purpose.

A real estate appraiser called as a witness by condemnor had testified that the southern portion of Prince George's County included "in excess of 358,000 acres of land that does have gravel deposits available." He added that ". . . my basic experience has been that the significance of gravel deposits on a tract does not tend to create a higher value than that

---

1. Prince George's County, Maryland and the State of Maryland, joined as respondents for the purpose of protecting any claim for unpaid taxes, are in no way concerned with the subject appeal.

which is normally established in the market for other uses. This has been my experience dealing with gravel people and in marketing property and also in my observations of appraisal of many, many properties throughout this area."

He stated that his appraisal had taken into consideration the fact that gravel was to be found upon the land and acknowledged that the existence of ongoing mining operations upon it "would be an increment of value of just land value." This witness, using the comparable sales approach to value, admitted he knew of no sale "in the southern end of the county that actually sold as an operation [such as the subject] where it was business and land combined." He acknowledged as well that he possessed no knowledge concerning the quality or quantity of the deposits upon the land.

Condemnor offered no other testimony relating to the presence of gravel deposits or to the effect, if any, of such deposits upon the fair market value of the land being condemned.

Owners offered the testimony of an expert witness who said that 3.479 acres of the land in the area actually taken in fee simple contained gravel of very uniform grade. The stratum was described by this expert witness as a deposit of "better material than I have examined [since 1967]." The witness testified that gravel deposits in Virginia, North Carolina and Maryland averaged 70% sand and 30% gravel whereas the land within the area taken contained 60% gravel and 40% sand. He explained that this circumstance caused the subject site to be "very much better" than the average site. That witness said that test borings indicated 163,273 tons of gravel were within the area taken.

*There was no testimony by any witness respecting the worth or value of gravel either mined or in place. There was no suggestion by any witness that the mineral content should be the subject of separate evaluation.*

Only two witnesses gave a monetary evaluation of the damages resulting from the taking. A real estate appraiser

was called as a witness by the condemnor. Alfred H. Smith, one of the property owners,[2] gave evidence in his own behalf.

The appraiser for the condemnor expressed the opinion that the direct and consequential damages resulting from the taking were $31,150.00. Smith expressed the opinion that the direct and consequential damages resulting from the taking were $243,670.00. The inquisition found by the jury fixed the damages at $113,048.30.

Condemnor's appeal thus states the question presented:

"Did the Court commit reversible error in instructing the jury; and in failing to instruct that in arriving at the fair market value of the property, it could not use the multiplication method?"

Owners contend: (a) that the suggested issue is not properly before this Court; and (b) that in any case, there was no error in the instructions of the trial court.

Stripped to bare bone, condemnor's contention is that the trial judge erred in refusing to give the jury "a cautionary instruction concerning the multiplication method." [3]

The manner in which the subject of the use for valuation purposes of a multiplication method arose, itself has given rise to owners' contention that the issue was not properly preserved by appellant.

The *owners* requested the trial court to give, *inter alia*, the following Instruction No. 1:

"The measure of compensation to defendant is to
be the ~~actual~~ fair market value of the property, which value depends upon the uses for which the property is available, and any special utility which may enhance its value in the market is an element to be considered.

---

2. The owner of land is at least presumptively competent to testify to his estimate of its value. Greater Balto. Con. Mkt. A. v. Duvall, 255 Md. 90, 93, 256 A. 2d 882, 884 (1969). His competence in this case was not attacked.

3. Multiplying total quantity of material in place by a unit price.

"The land is to be valued as land with the factor of mineral deposits given due consideration. Thus the value of the land as stone land suitable for quarrying is a proper subject of your consideration.

"Further, you may give consideration to the & quality
quantity of mineral that can be extracted and to the value thereof purely as evidence for arriving at the value of the land, ~~although you may not use the most obvious method of multiplying unit value times quantity.~~" [4]

The trial judge, acting *sua sponte*, struck out that portion of the requested instruction that related to a multiplication method. His reason for doing so becomes crystal clear from his comments in the course of colloquy concerning the *owners'* requested instruction:

"THE COURT: ... There's been no figures mentioned. So they won't multiply anything.

... They don't know what a multiplying unit value times quantity — there's never been any evidence in this case that — so why should I tell them about something that's not in evidence and not an issue in this case? You can tell them. I don't have any objection to what you say."

During that colloquy counsel for condemnor expressed no mutual desire for incorporation in the charge of language relating to a multiplication method such as was requested by owner. Neither did he then object to the trial court's action in deleting it. The nature of his expressed objection to the

---

4. The deletions and additions shown were made by the trial judge.

third paragraph of owners' requested Instruction No. 1 is shown by the following quotation from the record extract:

"MR. CLAGETT: With respect to the third paragraph, may it please the Court, the second line there. I would strike the word that can be extracted and to the value and substitute in quality so that the reading thereof would be further you may give consideration to the quantity of minerals and quality thereof purely as evidenced in arriving and I would insert fair market value of the land.

THE COURT: Do you object to that? You want me to add the quantity and the quality of the mineral that can be extracted? I don't see any objection to that.

MR. HARTMAN: If we add and quality?

THE COURT: Yes.

MR. HARTMAN: No objection.

MR. CLAGETT: So the record will reflect my objection to that extraction I am asking that the two sentences to that comma be able to read further you may give consideration to the quantity of the mineral and quality thereof purely as evidenced for arriving at a fair market value of the land.

THE COURT:          All right. After I give them these instructions you can put it on the record."

The trial judge incorporated in his charge to the jury the language of the third paragraph of owners' requested Instruction No. 1 as amended. The objection by counsel for the appellant to that portion of the charge was articulated as follows:

"I except to that portion of paragraph three dealing with valuation of land with mineral deposits where it was considered that mineral can be extracted and the value, for the same reasons given before. I have no objections to substituting and amending by adding the word quantity and quality. . . . I would ask at this time that the instructions as set forth in the Smith vs . . . be read as the Court approved it in that case, Smith vs. State Roads Commission. [5]

THE COURT:          All right. The only problem I have in that is that there's no evidence in this case as to the value of any sand and gravel. I won't allow any evidence on the value — I think I have covered it, Mr. Clagett.

MR. CLAGETT:          I agree with that, Your Honor, but I think this jury should have the matter clarified with respect to the presence of such deposits contributing only to the value of the land as a whole. In other words, they cannot and must not value the

5. 257 Md. 153, 262 A.2d 533 (1970).

minerals in place by any method to arrive at a value for the land. They must not attempt to value the minerals in place by any method.

THE COURT: I don't think that's the law. It's on the record. Anything else?

MR. CLAGETT: No. I think that's it."

On this state of the record, owners urge: (a) that no objection to deletion of the reference to a multiplication method was made by appellant and (b) that no request for such an instruction was made by appellant. Ergo, they contend, the issue urged here by appellant is not before us, citing Maryland Rule 554 d and e.[6]

The owners cite as well *State Roads v. Creswell,* 235 Md. 220, 201 A. 2d 328 (1964). That case dealt with rulings upon generalized motions to strike testimony. In one instance the Court of Appeals concluded that a partial striking of testimony by the trial judge complied fully with the apparent purpose of the motion to strike. In the second instance, the admitted evidence having been admissible in part, the general motion to strike all of the evidence was

---

6. Rule 554 d and e read as follows:

"d. *Objection.*

If a party has an objection to any portion of any instruction given, or to any omission therefrom, or to the failure to give any instruction, he shall before the jury retires to consider its verdict make such objection stating distinctly the portion, or omission, or failure to instruct to which he objects and the ground of his objection. Opportunity shall be given to make the objection in open court out of the hearing of the jury upon application either orally or in writing, made before or after the conclusion of the charge.

e. *Appeal.*

Upon appeal a party in assigning error in the instructions, shall be restricted to (1) the particular portion of the instructions given or the particular omission therefrom or the particular failure to instruct distinctly objected to before the jury retired and (2) the grounds of objection distinctly stated at the time, and no other errors or assignments of error in the instructions shall be considered by the appellate court."

held inadequate, the Court of Appeals pointing out that, "The trial court was neither expected nor required to search the testimony and sift out the objectionable matter." 235 Md. at 229, 201 A. 2d at 332. We find the decision inapposite.

While the course followed by trial counsel for the condemnor does not fit a classical pattern of clear compliance with the demands of Rule 554 d and e, we are persuaded that the course followed by him was in substantial compliance with the rule and was sufficient to preserve the condemnor's right to a review of the issue presented here. *Merritt v. Darden,* 227 Md. 589, 597-98, 176 A. 2d 205, 209-10 (1962).

Heavy reliance is placed by appellant upon the decision in *Smith v. State Roads Commission,* 257 Md. 153, 262 A. 2d 533 (1970), wherein the late Judge Finan, speaking for the Court of Appeals, said at 163 [538]:

> "The meaning which we extract from the cases representing the majority view is that, the expert witness may definitely take into consideration as one of the factors in reaching his evaluation of the land as a whole the quantity and quality of the minerals present, and the value which they give to the land considered as a whole. However, in making this appraisal he must not value the minerals separate and apart from the land or aggregate the value of the minerals and the value of the land. Furthermore, it is our view that the expert witness should not utilize the in place unit value, or any unit value of the mineral, multiplied by the quantity in order to arrive at the evaluation of the minerals, as we think the result thus obtained would be too speculative for the reasons which have been heretofore expressed in this opinion."

We see nothing in *Smith v. SRC, supra,* to indicate that the cautionary instruction approved in that case is requisite in every condemnation of land containing mineral deposits. We reiterate that there simply was no evidence in the

subject case concerning "the in place unit value or any unit value of the mineral."

In such circumstances we agree with the trial judge that in the absence of any such evidence, the instruction sought directly by the appellee and implicitly by the appellant would have required him "to tell [the jury] about something not in evidence and not an issue in this case."

However correct the proposed instruction was as an abstract principle, it bore no relationship to the evidence presented. In *Levine v. Rendler*, 272 Md. 1, 13, 320 A. 2d 258, 265 (1974), it was said:

> "A litigant is entitled to have his theory of the case presented to the jury, but only if that theory of the case is a correct exposition of the law and there is testimony in the case which supports it. *Fowler v. Benton*, 245 Md. 540, 548-49, 226 A. 2d 556 (1967), and *Schaefer v. Publix Parking*, 226 Md. 150, 152-53, 172 A. 2d 508 (1961). As Judge Prescott put it for the Court in *Schaefer*, 'The trial courts, in presenting their instructions to the juries, are not required to give the juries merely abstract statements of the law that have no relation to the facts of the case being tried.' "

This principle has particular relevance where its effect might confuse the jury. *Cf. Baltimore v. State Roads Comm.*, 232 Md. 145, 154, 192 A. 2d 271, 276 (1963).

We think the suggested cautionary instruction would be calculated to confuse in the absence of the slightest intimation by the court or by any witness that the sand and gravel present upon the land should be separately evaluated.

The trial judge included in his charge to the jury the following:

> "Now, in making your determination, I further instruct you as a matter of law that the measure of compensation to Mr. Smith is to be the fair market value of the property, which value depends upon the uses for which the property is available and any

special utility which may enhance its value in the market is an element to be considered. This land that you have heard testimony to, which you have seen, is to be valued as land with a factor of mineral deposits given due consideration. Thus that the value of this land as stone land suitable for quarrying is a proper subject for your consideration."

We think that this specific instruction sufficiently informed the jury that separate evaluations of the land and its mineral contents were impermissible.

The legislature has prescribed by statute the damages to be awarded where part of a tract is taken. The parts of the Real Property Code Article appropriate here read as follows:

"§ 12-104. *Damages to be awarded.*

\* \* \*

(b) *Where part of tract taken.* — The damages to be awarded where land, or any part of it, is taken is the fair market value of the part taken, but not less than the actual value of the part taken plus any severance or resulting damages to the remaining land by reason of the taking and of future use by the plaintiff of the part taken. The severance or resulting damages shall be diminished to the extent of the value of the special (particular) benefits to the remainder arising from the plaintiff's future use of the part taken.

"§ 12-105. *Fair market value; assessed value.*

\* \* \*

(b) *Fair market value.* — The fair market value of property in a condemnation proceeding is the price as of the valuation date for the highest and best use of the property which a vendor, willing but not obligated to sell, would accept for the property,

and which a purchaser, willing but not obligated to buy, would pay, excluding any increment in value proximately caused by the public project for which the property condemned is needed. In addition, fair market value includes any amount by which the price reflects a diminution in value occurring between the effective date of legislative authority for the acquisition of the property and the date of actual taking if the trier of facts finds that the diminution in value was proximately caused by the public project for which the property condemned is needed, or by announcements or acts of the plaintiff or its officials concerning the public project, and was beyond the reasonable control of the property owner." [7]

The court's instructions respecting damages were not less favorable to the condemnor than would have been the case if the above quoted statute had been read to the jury.

We are persuaded that viewed as an entirety, the trial court's charge fairly and fully instructed the jury as to the applicable law governing their determination of the damages resulting from the condemnation of owners' land by the condemnor. Finding no error, we shall affirm.

*Judgment affirmed.*
*Costs to be paid by appellant.*

---

7. Prior codifications of the statutes similarly worded were declared to have been "a restatement of the preexisting case law." Stickell v. City of Baltimore, 252 Md. 464, 473, 250 A. 2d 541, 546 (1969), and cases therein cited.