### REGAL CONSTRUCTION COMPANY *v.* WEST LANHAM HILLS CITIZEN'S ASSOCIATION, INC.

[No. 122, September Term, 1969.]

*Decided January 6, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN and SINGLEY, JJ.

*Martin H. Freeman,* with whom were *Sasscer, Clagett, Powers & Channing* on the brief, for appellant.

*Ronald G. Kane,* with whom were *Staley, Prescott & Ballman* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

West Lanham Hills Citizen's Association, Inc. (the Association) aggrieved by the fact that Regal Construction Company (Regal), in the course of a road construction job, had dumped fill on the Association's unimproved lot, brought suit against Regal in the Circuit Court for Prince George's County. One count of the declaration alleged trespass; the other, negligence. Regal has appealed from a judgment for $15,000 entered on the jury's verdict after its motion for a judgment *n.o.v.,* or alternatively for a new trial, had been denied.

Regal contends, and we think correctly, that the trial court erroneously excluded expert testimony with respect to the diminution in the market value of the Asso-

ciation's property, and compounded this error by submitting the case under an instruction which left the jury with no alternative to measuring damages other than by the cost of restoring the property to its original condition.

In *Samson Constr. Co., Inc. v. Brusowankin,* 218 Md. 458, 147 A. 2d 430, 69 A.L.R.2d 1326 (1958) and in *Superior Constr. Co. v. Elmo,* 204 Md. 1, 102 A. 2d 739, *reh.* 204 Md. 14, 104 A. 2d 581, 48 A.L.R.2d 932 (1954) we cited with approval Restatement, *Torts* § 929 (1939) and said that Maryland law does not differ materially from the Restatement rule set out in § 929:

> "Where a person is entitled to a judgment for harm to land resulting from a past invasion and not amounting to a total destruction in value, the damages include compensation for
>
> (a) at the plaintiff's election
>> i. the difference between the value of the land before the harm and the value after the harm or the cost of restoration which has been or may be reasonably incurred, or
>> ii. if a separable portion of the land has been damaged, the loss in its value, and
> (b) the loss of use of the land and
> (c) discomfort and annoyance, in an action brought by the occupant."

Comment (b) further explains:

> "* * * If, however, the cost of replacing the land in its original condition is disproportionate to the diminution in the value of the land caused by the trespass, unless there is a reason personal to the owner for restoring the original condition, damages are measured only by the difference between the value of the land before and after the harm. This would be true, for example, if in trying the effect of explosives,

a person were to create large pits upon the comparatively worthless land of another.

"On the other hand, where a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building. So, where a garden has been maintained in a city in connection with a dwelling house, the owner is entitled to recover the expense of putting the garden in its original condition even though the market value of the premises has not been decreased by the defendant's invasion."

It is no longer open to question that the Maryland rule is that damages may be measured in cases of this sort at the plaintiff's election either by the loss of value which results from the harm, or by the cost of restoration, subject to the limitation that if cost of restoration is disproportionate to diminution in value, then damage will be measured by the difference in value before and after the harm unless there is a reason personal to the owner for restoring the original condition. Once a reason personal is found, the measure of damages is the cost of restoration, even though this may be greater than the entire value of the property. *Sainato v. Potter*, 222 Md. 263, 159 A. 2d 632 (1960) ; *Samson Co. v. Brusowankin, supra,* 218 Md. at 468-69; *Warczynski v. Barnycz,* 208 Md. 222, 117 A. 2d 573 (1955) ; *Superior Constr. Co. v. Elmo, supra,* 204 Md. at 10; *Maloof v. United States,* 242 F. Supp. 175 (D.Md. 1965) and *Huber v. Serpico,* 71 N. J. Super. 329, 176 A. 2d 805 (1962). See also *Easter v. Dundalk Holding Co.,* 233 Md. 174, 195 A. 2d 682 (1963) ; *Levi v. Schwartz,* 201 Md. 575, 584, 95 A. 2d 322, 36 A.L.R.2d 1241 (1953).

J. Randal Walcroft, a witness produced by Regal, was qualified as an expert realtor and appraiser, and was asked the question on direct examination: "Disregarding the passage of time entirely, what effect on the value

of the property has any fill, if it exists, on the Citizen's Association property * * *?" The Association's objection was sustained, and later, Regal's counsel made a proffer of Walcroft's testimony:

> "The witness will testify, first, that the property south of the road can be used for parking.
>
> "Second, that the property has no value, real estate value, as R-55 alone but its only value is in conjunction with the adjacent commercial and for use in parking as the zoning ordinance permits in conjunction with adjacent land.
>
> "That as parking, to be feasibly used as parking, it would need some additional fill, and to the extent that any fill that is already on the property has enhanced the value of the property.
>
> "He will testify that for a meeting hall of the size about which we do have some evidence, you need approximately three square feet of parking space per square foot of floor space in the meeting hall.
>
> "That he would also testify that the available procedures to carry out that intended use are available, not only under re-zoning but under special exception, and the only thing that I think that has happened here so far is that Mr. Walcroft has said that unless these other procedures are made use of, that if you want to use it in actually doing some mathematical figures, you have to just use the commercial property. That is the only difference that has happened here."

The proffer should be considered in the light of testimony that the lot on which the fill was placed was irregular in shape, contained about 8,400 square feet and was separated by a road from a larger lot owned by the Association.

At the conclusion of the case, the court gave the jury this instruction on damages:

"Now, you are further instructed that if you find by a preponderance of the evidence presented in this case that the defendant placed or caused to be placed upon the plaintiff's real property dirt, macadam and concrete and other foreign matters, and the defendant's acts caused injury as its immediate consequence, whether intentional or unintentional, the defendant is liable in trespass to the plaintiff for the damages caused.

"We further instruct you that if you find that the plaintiff had reasons personal to it for restoring the property as nearly as possible to its original condition, the plaintiff is to be allowed damages based on the reasonable cost of solely restoring the property even though it might be greater than the value of the property, because an owner has the right to enjoy realty according to his personal tastes, and the arrangement of trees might be very important to it. So, it can recover for the cost of restoration if it showed that it had a personal reason for restoring the property to the condition that it was before the wrong was committed by the defendant."

Regal's counsel excepted to the charge:

"Due to the Court's failure to permit evidence as to the value of the land before and after the trespass, there is now no evidence in the case as to the change in value caused by the alleged trespass. We, therefore, have no evidence in the case, because of that refusal, with which to instruct the jury that the alternative theory of damages, that is, the change in value caused by the alleged trespass, is one measure that they could consider.

"We would except not just to the failure to admit the evidence, but following from that, to the failure to give the instruction."

and the court responded, "For the record, the Court will not give that instruction because we think the proof in the case would not allow it."

The Association would have us hold that Regal's exception to the instruction was too limited in scope to permit it to raise the question of the alternative measure of damages, relying on *Samson Co. v. Brusowankin, supra,* 218 Md. at 471-72. The issue in *Samson* was that the appellant argued that diminution in value was the *only* applicable measure of damages, not that the jury should have been allowed to decide whether diminution or restoration was the standard to be applied. We rejected the appellant's contention on appeal because of its failure to except to a charge which did not present the alternative theories.

We regard the Association's reliance on *Samson* as misplaced. It is quite clear that Regal's counsel was not excepting to the portion of the charge which referred to cost of restoration as the measure of damages, but rather to the court's exclusion of evidence regarding diminution, or lack of diminution of value and its failure to give an instruction covering loss of value as an alternative to cost of restoration.

As a practical matter, the exclusion of the Walcroft testimony and the portion of the charge regarding damages left the jury with only one way to go. The instruction made it clear the cost of restoration was the proper measure of damages in the event that there was a reason personal to the Association for restoring the original condition. Admittedly, the existence *vel non* of a reason personal was a jury question, so that a properly structured charge would have informed the jury as to the measure of damages to be applied should there be found no reason personal justifying restoration. Under such an instruction, the jury could have considered Walcroft's opinion as to the diminution, or the lack of diminution in value which resulted from filling the lot.

Regal, in its brief, makes much of the uncertain testi-

mony of James T. Dodson, president of the Association, describing the Association's plans for the use of the property. On deposition, he said that plans for a meeting hall were drawn in "1958 or '60," that for a year or "Maybe six months" prior to the dumping of the fill there had been "two or three picnic tables down there"; and that "We could use it for a parking lot. It wasn't mandatory that we use it for a picnic ground." At the trial, Mr. Dodson testified that the plans for a meeting hall had been drawn in 1952, but could not be located, and that the Association wanted the lot restored as a green buffer, saying, "Well, at one time we considered making a parking spot out of that, but then we changed our mind. We preferred to keep the trees there."

Since we propose to reverse for other reasons, we find it unnecessary to consider whether the Dodson testimony was sufficient to establish reasons personal on the part of the Association. On remand, it may well be that consideration should be given to the manner in which a corporation's reason personal can be established. Perhaps the missing plans can be located or excerpts from minutes or other corporate records may help. We doubt whether the testimony of a single member, even though he be an officer, is sufficient. With few exceptions, cost of restoration has been the measure of damages in cases where the plaintiffs were individuals and where residential property was involved. See the line of Maryland cases which followed *Superior Constr. Co. v. Elmo, supra,* but compare *Babcock v. Postal Telegraph-Cable Co.,* 117 S. C. 304, 109 S. E. 116 (1921).

> *Judgment reversed. Case remanded for new trial, costs to abide the result.*