## STATE FARM FIRE AND CASUALTY COMPANY v. BRETHREN MUTUAL INSURANCE CO.

[No. 1164, September Term, 1977.]

*Decided June 12, 1978.*

The cause was argued before MOYLAN, LOWE and WILNER, JJ.

*Roland C. Kent,* with whom were *Kent, Ogletree & Thornton* on the brief, for appellant.

*V. Timothy Bambrick,* with whom were *George M.*

*Radcliffe* and *Niles, Barton & Wilmer* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

This case involves the interests in insurance proceeds of two disinterested parties of interest. The interested parties of interest, as well as the disinterested parties of interest, agree on whose ultimate interest must be protected, but all are interested in the source from which that interest must be satisfied. Paraphrasing Dorothy Parker, it is not always the tragedies that come to court, it is the messes as well.

On June 27, 1975, Harry E. and Barbara Anne Conrad purchased a home from William D. Perryman and Dennis R. Conner, who in turn took back a mortgage containing a covenant by the mortgagors (Conrads) to insure the property and cause the policy to be endorsed so as to protect the interests of the mortgagees (Perryman and Conner).

The stipulated facts show no insurance was obtained by anyone until *one of the mortgagees* was bound by a $30,000 fire insurance binder on January 1, 1976, issued by State Farm Fire and Casualty Company who is the appellant here.

On March 11, 1976, Brethren Mutual Insurance Co. (the appellee here) issued a $50,000 fire policy containing an apportionment clause [1] to the owners-mortgagors (Conrads).

On July 24, 1976, the property was damaged by fire.

Two days later, July 26, 1976, Brethren Mutual added an endorsement to its policy adding the mortgagees as insureds *retroactively* to the policy date of issuance.

Declaratory judgment was sought by Brethren to determine whether each insuror was liable only for a portion of the loss under their respective pro rata liability clauses, and who was entitled to the proceeds. A plethora of pleadings ensued, among which was the defense of State Farm in the form of a motion for summary judgment contending, among other things, that: it had no insurance in effect covering

---

1. "Pro rata liability. This company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not."

anyone since the policy had been cancelled in May of 1976; and, if State Farm was obligated at all, it was to the co-mortgagee Perryman only, since he was the only named insured on the binder.

"What Brethren may be obligated to pay to its insureds, the Conrads, is a matter which does not involve State Farm. What State Farm may become obligated to pay to Perryman does not involve Brethren. There is no legal basis for any claim by Brethren against State Farm, and there does not even appear to be an allegation to that effect by Brethren. Accordingly, State Farm should not be a party to this suit by Brethren."

At some point, however, State Farm reevaluated its position and, for purposes of this case, stipulated, among other things, that apparently it had not effectively cancelled this binder; and, since the insured Perryman contended that he had intended to have Conner covered also, State Farm agreed not only to honor that intention, but to back-date its binder to December 18, 1975. State Farm also stipulated to the contents of the policy it *would have* issued — which policy also contained an apportionment clause.[2]

In spite of such stipulated concessions necessarily placing itself in the posture of a party in interest, State Farm contradictorily contends that:

"THE TRIAL COURT ERRED WHEN IT UNDERTOOK TO DECIDE THE OBLIGATIONS

---

2. "G. APPORTIONMENT: This company shall not be liable for a greater proportion of any loss less the amount of deductible, if any, from any peril or perils insured against in this form than (1) the amount of insurance under this policy bears to the whole amount of fire insurance covering the property or which would have covered the property except for the existence of this insurance, whether collectible or not, and whether or not such other fire insurance insures against the additional peril or perils insured hereunder, nor (2) for a greater proportion of any loss less the amount of deductible, if any, than the amount insured bears to all insurance whether collectible or not, covering in any manner such loss, or which would have covered such loss except for the existence of this insurance; .... The liability of this company (under this form) for such joint loss shall be limited to its proportionate part of the same aggregate limit of this and all other insurance of the same type."

"OF STATE FARM, ALTHOUGH THE PETITION
SET FORTH NO CLAIM BY THE PLAINTIFF
AGAINST THE DEFENDANT STATE FARM."

Contrary to appellant's assertions, this argument does not question that the controversy is justiciable in a declaratory judgment proceeding, as defined in *Patuxent Co. v. Commissioners,* 212 Md. 543, 548; *Lucas v. Merc.-Safe Dep. & Tr. Co.,* 29 Md. App. 633, 644, *cert. denied,* 277 Md. 738; rather, it carries the same thread as that undergirding appellant's second contention:

"AN INSUROR CANNOT LIMIT ITS LIABILITY
AND INCREASE THE ULTIMATE LIABILITY OF
ANOTHER INSUROR BY AMENDING ITS
POLICY AFTER THE OCCURRENCE OF THE
LOSS FROM WHICH THE LIABILITY ARISES."

At the root of the entire controversy, of course, are the apportionment clauses of the two insurance companies. Brethren concedes that the pro rata clauses are inapplicable if there is no identity of interest, *Newark Fire Ins. Co. v. Twohy,* 6 F. 2d 533, and see 44 Am. Jur. 2d *Insurance* §§ 1807-1809, but argues that such an identity of insureds arises from State Farm's stipulated concession that it insured the mortgagees, in conjunction with Brethren's obligation directly to the mortgagees by its "nunc pro tunc"[3] endorsement, as well as its less direct, but related, duty incurred by virtue of its equitably imposed obligation arising from the covenant to insure contained in the mortgage.

---

3. The post act Brethren amendment was considered by the trial judge as having a "nunc pro tunc" effect:

"(a) Brethren Mutual's original policy to the Conrads (the owners and mortgagors of the dwelling house) was amended by Brethren Mutual two days after the fire to correct the mistake of its agent in omitting the mortgagee clause from the original policy. It was specifically made retroactive to the date when the original policy was issued 'effective March 11, 1976', which was prior to the fire. In our view this had the same effect as a 'nunc pro tunc' order of a Court. There is nothing in the case to suggest that this amendment was anything more than a commendable and honest effort on the part of a good little insurance company to correct its agent's mistake in not originally including coverage to the mortgagees as intended. We believe this amendment had the legal effect of insuring the mortgagees from the inception of the policy."

Recognizing that the Court of Appeals has given the mortgagee as

"... the intended beneficiary of the insurance contract a right to enforce the same," *Farmers' Fire Ins. Co. v. Baker,* 94 Md. 545, 563;

see also *Giddings v. Seevers,* 24 Md. 363, the latter obligation is said to have arisen by virtue of the fact that the owner-mortgagor policy should have been endorsed to cover the mortgagees' interest pursuant to the covenant.

Because of its assumed obligation to the mortgagees, Brethren views its post factum endorsement as "merely formalizing the legal relationship which existed" between it and the mortgagees. Since both State Farm and Brethren insured the mortgagees, and both companies were obligated to pay both mortgagees, appellee argues, the requisite identity of interest existed and the pro rata clauses in both policies became operative making each insurer liable for its proportionate amount.

"Since each policy has a *pro rata* clause, which is permitted by the law, and since Phillips was covered by each policy, and the contract which each insurance company made was to pay its proportionate part of any loss which was suffered, it is difficult to see why the usual rule should not be applied and each company be required to pay its proportionate part of the judgments. That is the rule adopted by this court in fire insurance cases, based not upon the nature of the insurance, but upon the contract which the companies made." *Celina Mutual v. Citizens Casualty,* 194 Md. 236, 243.

State Farm, on the other hand, concedes (despite Brethren's resistance) that it is obligated to the mortgagees for the entire loss. It further implicitly concedes that as between Brethren and its initial insureds, the owners-mortgagors, Brethren may amend its contract after the fact if its insureds agree. Indeed, State Farm concedes implicitly, Brethren may very well be legally obligated to pay the mortgagees by virtue of the covenant in the mortgage as pointed out by the trial judge,

quoting from *Farmers' Fire Ins. Co. v. Baker, supra,* 94 Md. at 563:

> "But here it is made perfectly manifest from the proofs in the cause that the policy in this case was procured to be issued by the assured and to be entered as payable to 'the mortgagee' in pursuance of his covenant to that effect in the mortgage which he executed to the appellee, and set out in the proceedings; and that 'the mortgagee' intended was the appellee. And with such proof the fact that the entry in question was made a few days after the date of the policy, in connection with the fact, also in proof, that it had the sanction of the appellant company, and that the mortgagee was not specifically named must be regarded in a Court of equity as no sufficient ground for denying to the intended beneficiary of the insurance contract a right to enforce the same."

However, that legal obligation [4] does not provide an identity of insureds which would bring into play the proportionate liability clauses; nor can Brethren retroactively effect State Farm's rights by its post factum amendment on a contract with parties unrelated to State Farm.

The hassle evolves from the fact that the contracts for insurance against fire are indemnity contracts and the insureds are entitled to receive only the sum necessary to indemnify them, but no more, *Glens Falls Ins. Co. v. Sterling,* 219 Md. 217. If Brethren's policy to the mortgagors was not endorsed payable to the mortgagees, the mortgagors could recover the entire amount of the loss, which loss was less than the policy limits. The mortgagees, in turn, had the right to insure their debt and were contractually entitled to recover that debt which did not exceed its policy limits. The

---

4. We do not here decide whether the mortgagees, if they had in fact been the intended beneficiaries of the mortgagors' contract with Brethren, would have had any vested rights to the insurance proceeds. Although the precise issue has not been addressed in Maryland, the weight of authority seems to be that there must be some evidence of the creditor-beneficiary's acceptance or affirmance of the contract before it is enforceable by him. See 17A CJS *Contracts* § 519.

mortgagees' insurance carrier (here State Farm) would then be subrogated to the rights of the mortgagees, and could recover the debt from the mortgagors, who had contractually agreed to assume the burden of insuring against the risk. *Frontier Mtge. Corp. v. Heft,* 146 Md. 1, 13.[5] In the case before us, that would mean that Brethren would shoulder the entire loss.

If, however, Brethren is considered a coinsurer of the mortgagees, either by their belated amendment so stating, or by virtue of the mortgagees' derivative right to the proceeds (to the extent of their debt), *Farmers' Fire Ins. Co. v. Baker, supra,* State Farm will have to share proportionately the loss to the extent of its coverage.[6]

It is apparent to this Court that at the time of the fire there was no identity of interest that caused the apportionment clauses to come into effect, let alone there having been any similarity of insured parties. The mortgagors' insurance contract admittedly does not name the mortgagees as beneficiaries, and the mere assertions of appellees as to what was intended is insufficient to overcome the presumption, to which this Court is bound, that a contract means what it says, and no more. *Frontier Mtge. Corp. v. Heft, supra,* at 13. Brethren appears to have assumed that the mortgagees could prove mistake were they to institute an action against Brethren and, on the basis of this unproved assumption, Brethren rests its argument. However, the evidence actually in the record indicates simply that the mortgagors-owners

---

5. If the damage is repaired by the mortgagors, however, the mortgagees' interest in maintaining equilibrium of their debt and security is again in balance. Since the mortgagees would not be entitled to recover from the mortgagors, Cottman Co. v. Trust Co., 169 Md. 595, it would seem to follow that the mortgagees' debt need not be paid by the insurer since their security is intact, and consequently no subrogees' rights would arise. Because of the limited factual stipulations we know not the status of the damage or its state of repair.

6. It was stipulated that Brethren's coverage was for $50,000 and State Farm's $30,000. The total loss was $8,818.14 and the trial court decided:

"3. That under the pro-rata or apportionment clauses in said policies of fire insurance on the subject dwelling house, the Brethren Mutual Insurance Company shall pay 5/8ths of the total loss of $8,818.14, and State Farm Fire & Casualty Company shall pay 3/8ths of the total loss of $8,818.14, to the mortgagees and defendants herein, William O. Perryman and Dennis R. Conner."

had insured the property and that the mortgagees had insured their debt. *Frontier Mtge. Corp. v. Heft, supra,* 146 Md. at 13. Thus, whatever rights the mortgagees had to the mortgagors' insurance proceeds (from Brethren) were derivative, and they were entitled only to receive what may be found to be due the mortgagors. *Rent-A-Car Co. v. Fire Ins. Co.,* 158 Md. 169, 175-176. The mortgagees, however, are contractually entitled to recover from their own insurer since the contracts are entirely separate and independent of each other. *Cf. Hanover Fire Ins. Co. v. Brown,* 77 Md. 64, 73.

Nor can Brethren and its insured contractually agree after the fire, to amend their contract so as to impose a liability upon a third party who was neither directly nor indirectly privy to that contract. It matters not whether the post factum amendment was avariciously added by Brethren to limit its liability or whether, as the trial judge determined:

> "this amendment was [nothing] more than a commendable and honest effort on the part of a good little insurance company to correct its agent's mistake including coverage to the mortgagees as intended." [7]

Brethren may indeed voluntarily bestow additional benefits to its insureds, or, with their insureds' consent, share their benefits with another or perform their insureds' covenanted obligations. But Brethren is not entitled to do so with State Farm's funds, with or without the Conrads' consent. Normally a person cannot be made liable under a contract to which he is not a party, *cf. Snider Bros., Inc. v. Heft,* 271 Md. 409, 414, and though he may subsequently bind himself by accepting or adopting it, the facts here do not indicate such acceptance. That appellant finally chose to hold its protective

---

7. Appellant points out in its brief that the stipulated facts do not justify the court's conclusion:

"Not only was there no evidence that Brethren is 'good' or 'little', but, more importantly, there was no evidence that Brethren's agent had erred or that there was an original intent to insure the mortgagees. On the contrary, the Affidavit of Brethren's agent Hogans, filed by Brethren, sets forth that 'it was not known until July 26, 1976, two days after a fire caused by lightning that a Mortgage on the above-mentioned property was held by William D. Perryman and Dennis R. O'Connor [sic]."

umbrella over both mortgagees when the storm broke, does not entitle the mortgagors' insurer to employ that same sheltering device. It was Brethren who agreed to shield the mortgagors, and because Brethren is obliged to protect them, that same shield is derivatively available to the mortgagees by covenant.

Recognizing that repairs may have been effected during the pendency of this appeal, we will remand this case for the trial judge to fashion a decree in conformity with this opinion. Before doing so, he is free to hear additional evidence or receive stipulations of fact bearing upon the outcome as he may, in his discretion, deem justified. See *Cottman Co. v. Trust Co., supra.*

> *Judgment reversed.*
> *Case remanded for revision of decree*
> *in conformity with this opinion.*
> *Costs to be paid by the appellee.*