LEVI ET AL. *v.* SCHWARTZ ET AL.

[No. 80, October Term, 1952.]

576

578

*Decided March 12, 1953.*

*Motion for rehearing, filed April 10, 1953, denied April 22, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Nathan Patz,* with whom was *Jack L. Grossman* on the brief, for appellants.

*Charles G. Page,* with whom was *Stewart Brown* on the brief, for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was instituted in the Baltimore City Court by Sophie B. Schwartz, administratrix of the estate of Elizabeth T. Schwartz, deceased, and by Sophie B. Schwartz individually and Mary S. Ewashen, and her husband, Dmytri Ewashen, against Edgar A. Levi and Keystone Homes, Inc., a development company, of which he is president, to recover damages caused by excavation to a lot of ground at 813 Bradhurst Road.

The lot is a part of a tract containing eighteen acres, known as the Anchorage, and is completely surrounded by the other land in the tract. The lot, which measures 125 feet by 122 feet, is improved by a bungalow built some years ago by the owner, Clara B. Benninghaus, for Mrs. Schwartz. Access to the bungalow was afforded by a private road from Harwood Avenue. Mrs. Benninghaus, who died in 1944, devised the lot to Mrs. Schwartz.

In January, 1946, Levi purchased all of the tract, except the lot in question, from the executor of Mrs. Benninghaus' estate. Mrs. Schwartz joined in the deed to waive her rights to the use of the streets and rights of way in the tract, subject to the proviso that Levi would lay out along the north line of the lot a street (now Bradhurst Road) not less than 40 feet wide, the south side of the street to coincide with the north line of the lot, and a right of way (now Alhambra Avenue) 40 feet wide from that street to Benninghaus Road or Harwood Avenue for the use of Mrs. Schwartz. Levi

conveyed the tract in September, 1946, to Keystone Homes, Inc., hereinafter called the developer.

The developer's engineer, Albert E. Pohmer, discussed the plans of development with the City Planning Commission. The plans adopted by the Commission called for considerable excavation around the lot for the beds of Bradhurst Road and Alhambra Avenue. The developer thereupon engaged Ehrhardt & May, Inc., to do the excavating. Stakes were placed by the engineer on the north side of Bradhurst Road and the west side of Alhambra Avenue for the guidance of the excavator. The excavator also received grade sheets showing the excavation required.

The excavation proceeded northward from Harwood Avenue up what is now Alhambra Avenue, stopping in the spring of 1947 south of what is now the alley between Bradhurst Road and Beaverbrook Road. In the summer of 1947 the developer gave the excavator permission to take some of the soil out of Alhambra Avenue near the alley. Plaintiffs claim that the excavator removed some soil from the southwest corner of their lot. Several months later the excavation proceeded on Alhambra Avenue to Bradhurst Road, and then eastwardly on Bradhurst Road beyond the lot. The alley in the rear of the lot was completely excavated in the early part of 1949. Thus the streets were finally excavated in accordance with the prescribed grades and were connected with Benninghaus Road and Harwood Avenue.

In December, 1947, plaintiffs inherited the lot from their mother. They instituted suit in November, 1949, alleging that defendants had unlawfully entered their lot and from it had excavated and removed soil which constituted the support of its front, sides, and rear, so that the property has become subject to washing and other damages from the elements.

The first trial of the case was held in June, 1951, before Judge Manley and a jury. At that trial the jury awarded plaintiffs $3,500, but, upon their refusal to

file a remittitur reducing the verdict to $2,500, the Court set it aside.

The case was tried the second time in March, 1952, before Judge Niles and a jury. At that trial the jury rendered a verdict in favor of plaintiffs against both defendants for $11,511. From the judgment thereon defendants appealed to this Court.

*First.* Defendants contend that the deed from the executor of Mrs. Benninghaus' estate made it necessary to construct Bradhurst Road and Alhambra Avenue, that it was the duty of the Planning Commission of Baltimore City to establish the grades of the streets, and that those grades had to be complied with. The City Charter provides as follows: "The Commission shall investigate and study the development of sub-divisions of land, as herein defined, and shall formulate and publish rules and regulations for the development of such sub-divisions which will require that the development plans include adequate provision for all public improvements, enterprises and all public utilities, whether privately or publicly owned or operated; for the proper width, grade and arrangement of streets, and all uses of land for public transportation, and the relation thereof to existing streets; for adequate and convenient open spaces for traffic and the access of fire-fighting apparatus; for proper drainage; and which will require that all such sub-divisions and the owners thereof comply in all respects with any applicable Official Detailed Plan." Baltimore City Charter, 1949 Ed., sec. 116; *Feldman v. Star Homes, Inc.,* 199 Md. 1, 84 A. 2d 903.

It can reasonably be inferred that Mrs. Schwartz and Levi understood that the grades for the streets had to be established by the City Planning Commission. But it can also be reasonably inferred that Levi would be liable for loss of lateral support to Mrs. Schwartz's land and for any unlawful invasion of it.

*Second.* Defendants contend that, even if the excavator did cut into the lot at several places, plaintiffs

did not sustain any loss of lateral support of the land. They claim that a survey made in 1949 shows that there had been no withdrawal of lateral support, and that if there has been any erosion of the slopes it has been very slight. They maintain that a slight erosion, not sufficient to induce a sinking of the soil, does not give rise to an action for damages for loss of lateral support in advance of actual subsidence of the land, and that removal of some surface soil without subsidence does not entitle the owner to recover more than the value of the soil removed.

It is an established principle of law that every owner of land has the right to lateral support from the adjoining soil, and if a landowner removes the soil from his own land so near the land of his neighbor that his neighbor's soil will crumble away under its own weight, he is liable for damages so occasioned. The right of support to land from the adjoining soil is a right of property, and not an easement, and if that support is withdrawn and injury ensues, he can maintain an action for damages without proving negligence or want of skill on the part of the adjoining owner.

Generally, a person who withdraws the naturally necessary lateral support of land in another's possession is liable for a subsidence of such land of the other as was naturally dependent upon the support withdrawn, in the absence of a superseding cause or other reason for relieving him. While the withdrawal of lateral support subjects the actor to liability, it does not make him liable in an action for damages until a subsidence occurs. Moreover, to make the actor liable, the subsidence must be substantial. It has been said that the fall of a few grains of sand is not actionable. However, a subsidence is any movement of the soil from its natural position. A shifting, falling, slipping, seeping or oozing of the soil is a subsidence within the meaning of the term as used in the law of lateral support of land. 4 *Restatement, Torts,* sec. 817.

In the Court below Sophie B. Schwartz, now Sophie Schwartz Ayres, gave the following description of the erosion: "The ground is constantly washing away. We haven't any footing in the back fence to keep it up properly, and the erosion has continued down to the curb line. You have nothing but mud to walk through in order to get up the steps, and on the side is constantly washing down to the curb line, and on the east it is washing over on the property 821 Bradhurst Road." The evidence clearly showed that there had been a substantial subsidence.

*Third.* Defendants contend that they cannot be held liable for any tort committed by Ehrhardt & May, Inc., in violation of their instructions. The Court instructed the jury that if the excavator removed soil belonging to plaintiffs for its own purposes, but without the knowledge or consent of defendants, then defendants were not liable; but if the excavator acted under the direction or with the consent of the officers or agents of the developer, who had actual or apparent authority to authorize such acts, then the developer and the officers or agents who gave authorization are liable for the acts of the excavator. We think that instruction was correct.

*Fourth.* Levi contends that, as the developer's president, he should not be held liable for any unauthorized excavation done by Ehrhardt & May, Inc., since he did not direct or supervise any of the excavation. He claims that there is no evidence that he participated in the removal of any soil from the lot. It is a generally accepted rule that an officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor, but an officer of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable unless he specifically directed the particular act to be done or participated or co-operated therein. *Blaen Avon Coal Co. v. McCulloh,* 59 Md. 403, 418; *Purdum v. Edwards,* 155 Md. 178, 185, 141 A. 550; *Ellingson v. World Amusement Service Ass'n,* 175 Minn. 563, 222 N. W. 335.

Levi cannot say that he did not know about the work of the excavator. He knew that the grades had been established by the Planning Commission, and as an experienced builder he evidently knew what effect the excavation would have on adjoining land. He visited the scene of operations every day and gave orders to the construction foreman. The evidence supports the theory that he participated in the alleged negligent and wrongful acts of the excavator.

*Fifth.* Defendants contend that the Court instructed the jury improperly as to the measure of damages. The Court instructed the jury that they had the option of awarding plaintiffs either the difference between the value of the land before the damage and its value after the damage, or the cost of restoration unless it is disproportionate to the diminution in value. The general rule is that a person whose real property has been injured by another's negligent and wrongful act is entitled to such damages as will compensate him for the injury or loss sustained. It is held in this State that the measure of damages to real property damaged by excavation on adjoining property is the cost of restoring it, if it can be restored to the condition it was in before the damage without cost disproportionate to the damage, but where the cost of restoration is greater than the diminution in the market value, the correct measure is the difference between the value of the property before the damage and its value after the damage. *Mullan v. Hacker,* 187 Md. 261, 270, 49 A. 2d 640; *Easter v. Dundalk Holding Co.,* 199 Md. 324, 86 A. 2d 477.

Plaintiffs contend, however, that the only way to stop the erosion and restore the property is to build a retaining wall around its slopes, and that they may even be required by the city to build a retaining wall. The ordinance upon which they rely provides as follows: "If, when grading a lot or premises, the new grade is lowered below the surface or ground level of the adjoining property, the new grade shall slope upon an angle less than the angle of repose of the material, but never

steeper than 1 foot vertical to 2 feet horizontal, to meet the grade of the adjoining property at the line, or a retaining wall in accordance with Paragraph 4992 shall be built entirely on the ground of the owner causing the grading." Baltimore City Code, 1950 Ed., Art. 5, par. 2223.

Defendants complain that the amount of the judgment in this case is disproportionate to the diminution in value of the lot. They contend that the Court erred in instructing the jury that "such cost of restoration may be awarded, even though this may be greater than the entire value of the property." We find no reversible error in the instruction in view of the fact that the only way to restore the property is to build a retaining wall.

Defendants also contend that the Court should have instructed the jury to consider the benefits conferred upon plaintiffs' lot, such as better streets, sewage, and lighting, in mitigation of damages. It is true that, as a general rule, where the defendant's tortious action has caused damage to the plaintiff's property, but in so doing has also conferred a special benefit upon the property, the value of the benefit may be considered in mitigation of damages, where that is equitable. But as a qualification of the general rule, clearly applicable in the present case, it is recognized that where the benefit received in connection with the injury is the result of the forethought of the plaintiff or of a gift to him by a third person, the plaintiff is not barred from recovery merely because he suffers no net loss from the injury. 4 *Restatement, Torts,* sec. 920.

Where land is dedicated for the purpose of a public street, the municipality acquires not only the easement of passage but also the right to grade and improve the surface of the street, and to lay sewers, drains and pipes for various utilities beneath the surface. In this case the benefits derived by plaintiffs from the development were no more than they and others in the neighborhood were entitled to, and if defendants wrongfully injured

their land, they cannot escape liability for damages by showing that plaintiffs received some general benefits.

*Sixth.* Defendants contend that the Court erred in six rulings on the evidence.

(1) They contend that the Court erred in rejecting expert opinion as to the technical meaning of the word "coincide," as contained in the clause "the south side of the street to coincide with the north line of the property." They proffered testimony of the engineer, the draftsman of the deed, and a professor of civil engineering. It is an established rule that where technical terms are used in a written instrument, parol testimony may be introduced to explain their meaning. Ordinarily, however, the construction of a written instrument is a question of law for the court, and if its terms are not ambiguous, obscure, or technical, parol evidence cannot be introduced to aid in their construction. *Roberts v. Bonaparte,* 73 Md. 191, 199, 20 A. 918, 10 L. R. A. 689; *Aetna Indemnity Co. v. Waters,* 110 Md. 673, 691, 73 A. 712. As the Court below had no difficulty in understanding the meaning of the word "coincide," there was no error in refusing testimony of experts to aid in the construction of the deed.

(2) They contend that the Court erred in refusing evidence that it was the function of the city officials to prescribe the courses and grades of Bradhurst Road and Alhambra Avenue, and that defendants were required to comply with the grades established. Defendants contend that such testimony was relevant to the question whether the developer, in laying out the streets, carried out the intention of the parties to the deed. The Court took the view that the action of the city officials in fixing grades and street levels cannot take away the rights of private parties. We find no reversible error in the ruling.

(3) They contend that the Court erred in refusing to admit an inconsistent pleading filed by plaintiffs in a suit brought against the city growing out of the same happenings as alleged in the case at bar. After the

Highways Engineer had notified plaintiffs of the intention to pave sidewalks, plaintiffs filed suit to enjoin the city from proceeding with the paving without the protection of plaintiffs against further expense. Defendants argue that the pleading was admissible for the purpose of showing inconsistently asserted claims. Pleadings of a party in a suit other than the one on trial are open to explanation or rebuttal, or may be shown to have been made by mistake. *Nicholson v. Snyder*, 97 Md. 415, 426, 55 A. 484. But plaintiffs explained that there was nothing inconsistent between the suit for injunction and the case at bar, and the Court declared that it was not advised of any inconsistent statement of facts.

(4) They contend that the Court erred in introducing photographs of a retaining wall erected by the developer on the west boundary of the development. That wall had no connection with the question of damages for lateral support, but the photographs were offered for the purpose of refuting the contention that the construction of a retaining wall would not be practicable, and plaintiffs explain that the purpose was accomplished when Levi admitted that he had built a retaining wall on the development. We do not consider the ruling improper.

(5) They contend that the Court erred in refusing testimony comparing the value of the lot before the excavation with its value after the excavation. Defendants proffered testimony to show that the lot was worth $6,000 prior to the excavation and $10,000 at the time of the institution of suit in 1949. They also contend that the Court erred in striking out an estimate which Mrs. Ayres made in a petition filed in the office of the Register of Wills that the property was worth $4,500. Since it appears that it will be necessary to build a retaining wall, since the evidence indicates that it will cost more than $11,000, we find no reversible error in these rulings.

(6) They contend that the Court erred in introducing a section of the Building Code pertaining to retaining walls to be erected on the excavator's land under circumstances different from the situation in the case. This section was pertinent to explain that ordinarily the defendants would be required to build the retaining wall on their land, not on the land of the plaintiffs; but, as we have said, under the peculiar circumstances of this case, this cannot be carried out on the land of defendants and would have to be built on the land of plaintiffs at the expense of defendants. We, therefore, hold that the introduction of the section was proper.

*Seventh.* They contend that the Court erred in refusing to order a mistrial. They complain because the Court stopped their attorney in his argument to the jury to modify the instructions as to measure of damages. They contend that the original charge was erroneous, and that the modification made the error greater. We do not think the jury could have misunderstood the Court's meaning. In recapitulating the evidence concerning the value of the lot, the Court did not segregate the value of land from the value of improvements, but said: "We are not concerned in the present case with physical damage to buildings." We do not think defendants were prejudiced by the clarification.

Finding no reversible error in the rulings and instructions of the trial Court, we will affirm the judgment entered in favor of plaintiffs.

*Judgment affirmed, with costs.*