**LEXINGTON INSURANCE CO.**

v.

**BALTIMORE GAS & ELECTRIC CO.**

**Civil No. Y–96–762.**

United States District Court,
D. Maryland.

Sept. 19, 1997.

Elliott R. Feldman, Philadelphia, PA, Adam J. Sevel, Baltimore, MD, for Plaintiff.

Kerry B. Fisher, Stephen J. Rosasco, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION

JOSEPH H. YOUNG, Senior District Judge.

### I.

Plaintiff Lexington Insurance Co. ("Lexington"), a Massachusetts corporation, entered into a fire insurance contract with Clipper Industrial Park ("Clipper"), a Maryland general partnership. Clipper owns and operates a large industrial park on Clipper Road in Baltimore City. On September 16, 1995, a

fire occurred at Clipper's premises, completely destroying or damaging numerous buildings on the premises. Lexington maintains a failure of electrical equipment owned by Defendants Baltimore Gas & Electric Co. ("BG&E") caused the fire. Pursuant to the insurance policy, Lexington paid Clipper $1,425,000 for the destroyed buildings, and $198,188 for loss of rental income. Lexington subsequently filed this suit against BG&E as a subrogee of Clipper, invoking the Court's diversity jurisdiction.

At the Court's request, the parties submitted memoranda on the issue of the proper measure of damages to assist the Court in deciding this hotly contested issue. The heart of the dispute centers on whether restoration costs or diminution in value is the proper measure of damages. Lexington seeks to recover the costs of restoring the Clipper property, estimated at approximately $4,400,000. BG&E contends the proper measure of damages is the property's diminution in value. BG&E urges the cost of restoring the property is grossly disproportionate in light of the low value of Clipper's property ($1,230,000 as estimated by Lexington's experts), and of the relatively small diminution in value of Clipper's property resulting from the fire ($460,000 by Lexington's estimate, $100,710 by BG&E's estimate).

## II.

A federal court exercising diversity jurisdiction must apply applicable state law. *Erie R.R., Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Because BG&E's allegedly tortious acts occurred in Maryland, Maryland law controls the issue of damages.

■ Lexington filed this suit as a subrogee of Clipper. Subrogation is a legal fiction permitting an insurer to assume the rights of the insured-and to recover for the wrongful acts of a third party against the insured-where the insurer has paid the insured for loss under a contract of insurance. *Mayor & City Council of Baltimore v. Blibaum,* 280 Md. 652, 663, 374 A.2d 1152 (1977); *State*

*Farm Fire & Cas. Co. v. Brethren Mut. Ins., Co.,* 39 Md.App. 570, 575–76, 386 A.2d 1249 (1978). The insurer's right of recovery as a subrogee is limited to the rights of the insured. *General Cigar Co. v. Lancaster Leaf Tobacco Co.,* 323 F.Supp. 931, 935 (D.Md. 1971) (citing *Poe v. Philadelphia Cas. Co.,* 118 Md. 347, 353, 84 A. 476 (1912)).[1]

■ Lexington, as the insurer/subrogee, may not receive more than the amount paid under the policy regardless of the applicable measure of damages. *See Virginia Elec. & Power Co. v. Westinghouse Elec. Corp.,* 485 F.2d 78, 84 (4th Cir.1973); *Milan v. Kausch,* 194 F.2d 263, 265 (6th Cir.1952) (stating general rule that subrogee may be reimbursed only to the extent of amount paid in discharge of an obligation); COUCH ON INSURANCE 2D (Rev. ed.) § 61.39. Accordingly, the Court holds that if the jury returns a verdict for Lexington, the maximum amount of damages will be $1,425,000 for property damage and destruction, and $198,188 for lost rents.

## III.

### A.

■ Maryland law permits a plaintiff to choose between the diminution in value of the property or the cost of restoration as the measure of damages resulting from tortious injury. *Superior Constr. Co. v. Elmo,* 204 Md. 1, 9–10, 102 A.2d 739 (1954); *Regal Constr. Co. v. West Lanham Hills Citizen's Ass'n,* 256 Md. 302, 260 A.2d 82 (1970). If, however, the cost of restoration is disproportionate to the diminution in value, the latter is the appropriate measure of damages *unless* the Plaintiff has a "reason personal" for restoring the property. *Regal,* 256 Md. at 305, 260 A.2d 82; RESTATEMENT OF TORTS § 929 cmt. b. When a "reason personal" is found, the plaintiff may recover restoration costs even if greater than the value of the entire property. *Id.* The *Elmo* court indicated this rule does not differ materially from the Restatement of Torts § 929. *Elmo,* 204 Md. at 10, 102 A.2d 739.

---

1. It is unclear whether Maryland or Massachusetts principles of subrogation apply in this case. The insurance contract does not specify what law applies, and the pleadings do not state where the contract was formed. Massachusetts law, however, accords with Maryland principles of subrogation. *See Home Owners' Loan Corp. v. Baker,* 299 Mass. 158, 12 N.E.2d 199 (1937).

*Elmo* also explains that when a building is reduced to salvage value, the cost of restoration is the measure of damages if restoration is possible and the cost is not disproportionate to the injury. If the cost of restoration is greater than the diminution in market value of the property, the latter is the proper measure of damages. *Id.* (citing *Mullan v. Hacker*, 187 Md. 261, 49 A.2d 640 (1946)). BG&E seizes on this language in *Elmo* to assert the existence of a separate rule for measuring damages when a building is reduced to salvage value.

Although the fire in this case destroyed and damaged many of Clipper's buildings, the Court believes the general Restatement rule applies in this case. The *Regal* court found the Restatement rule applicable in "cases of this sort", referring to cases of tortious injury to property. *Regal*, 256 Md. at 305, 260 A.2d 82. Though *Regal's* facts did not involve tortious injury reducing a building to salvage value, the broad language of the case suggests the existence of a single Maryland rule. Further, the *Mullan* case, which predates *Elmo* and *Regal*, speaks in general terms about tortious property damage and does not state a specific rule applying to cases of tortious injury to buildings. *Elmo* and *Regal* indicate Maryland's adherence to the Restatement rule in all cases of tortious injury to real property. The Court therefore finds the rule stated in *Regal* and *Elmo* to be the controlling law.

BG&E, however, contends diminution in value is the appropriate measure of damages when a building is completely destroyed, citing cases from other jurisdictions. Maryland has never addressed this precise question. Courts in other jurisdictions apply one of three rules when a building is destroyed or damaged. Some courts hold diminution in value to be the proper measure of damages.

*See* 22 AM.JUR. 2D *Damages* § 418. Other courts permit recovery of restoration costs. *Id.* Finally, some courts view buildings separately from realty, and conclude the proper measure of damages is the reasonable value of the building at the time of its destruction. *Id.* The only Maryland decision lending support to BG&E's view is *Mullan v. Hacker*, and as discussed above, *Elmo* and *Regal* indicate Maryland's modern adherence to the Restatement view.[2] Simply stated, no reasonable basis exists to conclude Maryland would hold diminution in value is the appropriate measure of damages when a building is destroyed.

### B.

Maryland case law permits Lexington to recover restoration costs unless the cost of restoration is "disproportionate" to the diminution in value of the property caused by the injury. *Elmo*, 204 Md. at 10, 102 A.2d 739. If the restoration cost is disproportionate to the diminution in value, Lexington may only recover restoration costs if Clipper had a "reason personal" for the restoration of the property. *Id.* Lexington cannot recover more than the amount necessary to restore the property to its *original* (apparently dilapidated) condition before the fire. *Id.*

The Maryland cases provide little guidance as to when restoration costs are disproportionate, as a matter of law, to the diminution in value of the damaged property. In *Levi v. Schwartz*, 201 Md. 575, 95 A.2d 322 (1953), the defendants deprived the plaintiffs of lateral support around the boundaries of their property, requiring the installation of a retaining wall. The Maryland Court of Appeals sustained a judgment for $11,500, which was "substantially greater" than the property's value (though the property's Value is unclear from the opinion). In the *Elmo*,

---

2. One could argue the Restatement approach does not apply in this case because the text of both the First and Second Restatements permits the election between diminution in value and restoration costs when the harm to real property does not result in a "total destruction in value". RESTATEMENT OF TORTS § 929. BG&E appears to make this argument in its Memorandum. This argument contains two flaws. First, though *Elmo* and *Regal* indicate Maryland law on this point is *in pari materia* with the Restatement

approach, the Maryland Court of Appeals has never adopted the Restatement *in haec verba*. Thus, one is left to follow the general approach contained in *Elmo* and *Regal* permitting an election between these two measures of damages. Second, Clipper's property was not completely "destroyed": a significant number of buildings were damaged or destroyed, but the entire property has not been completely deprived of its value. Accordingly, even if the literal Restatement language controls, it does not apply here.

Court of Appeals affirmed the trial court's award of $2750 in restoration costs, which was slightly higher than the diminution in value. *Elmo*, 204 Md. at 11, 102 A.2d 739. Neither case establishes a benchmark for determining when the cost of restoration is disproportionate to the diminution in value. In *Maloof v. United States*, 242 F.Supp. 175 (D.Md.1965), a fire caused by a government contractor severely damaged the vegetation on the plaintiff's land. The court, applying Maryland law, awarded $71,910 in damages to approximate reasonable, but not complete, restoration of the property. The court did not discuss a standard to determine proportionality between cost of restoration and diminution in value.

Other jurisdictions generally permit relatively generous awards for costs of restoration even if substantially in excess of the property's diminution in value. *See, e.g, Berg v. Reaction Motors Div.*, 37 N.J. 396, 181 A.2d 487, 491–92 (1962) (permitting award of $25,605 for restoration of structural damage to property where diminution in value was $3700); *Melton v. United States*, 488 F.Supp. 1066 (D.D.C.1980) ($90,000 award granted to complete a $40,000 restoration job); *Trinity Church v. John Hancock Mut. Life Ins. Co.*, 399 Mass. 43, 502 N.E.2d 532, 533 n. 3 (1987) (allowing $3.6 million award to repair historic church suffering structural damage); *see generally* Carol Chomsky, *Of Spoil Pits and Swimming Pools; Reconsidering the Measure of Damages for Construction Contracts*, 75 MINN. L. REV. 1445, 1487 (1991). Courts have found restoration costs disproportionate in only a handful of cases. *See Heninger v. Dunn*, 101 Cal.App.3d 858, 162 Cal.Rptr. 104, 109 (1980) ($241,257 cost of restoring vegetation to damaged land unreasonable in relation to property value of $179,000 before trespass which increased to $184,000 after trespass); *Ewell v. Petro Processors of La., Inc.*, 364 So.2d 604, 608–09 (La.Ct.App.1978) (owners of one-eighth interest in land injured by toxic waste limited to

$25,000 in damages for value of their interest where cost of restoration was $170 million). *See generally* Chomsky, *supra*, at 1487 & n. 146.

■ Whether Lexington's maximum recovery of $1,425,000 for restoration damages is disproportionate to the diminution in value is initially a question of fact for the jury to decide. The jury will have to decide which expert's estimate of diminution of value is accurate, and assess the extent of reasonable restoration costs. Because Maryland law establishes no benchmark for determining the proportionality of restoration costs to diminution in value, it is unclear if as a matter of law Lexington's maximum recovery is disproportionate to either Lexington's or BG&E's estimate of the diminution in value of Clipper's property.

## C.

Even if Lexington's maximum $1,425,000 recovery for restoration costs is disproportionate to the diminution in the value of Clipper's property, Lexington may recover restoration costs if Clipper has a "reason personal" for restoring the property to its *original condition.* Lexington asserts it will introduce evidence at trial that Mr. Bill Poloway, a partner in the Clipper venture, intended to fulfill a "long-term personal aspiration" by converting the Clipper property to a sound stage and production studio. BG&E, relying on an article in the *Baltimore Sun*,[3] contends Mr. Poloway did not conceive this idea until nineteen months after the fire, notes the drastic renovations required for such a project far exceed the dilapidated condition of the buildings before the fire, and believes the "reason personal" exception applies only when the landowner had a personal, non–commercial design for his property.[4]

■ In *Samson Constr. Co. v. Brusowankin*, 218 Md. 458, 147 A.2d 430 (1958), the Maryland Court of Appeals discussed the "reason personal" exception to the prohibi-

**3.** Edward Gunts, *Irons in the Fire*, BALT. SUN, April 13, 1997, at E1.

**4.** BG&E also argues Lexington cannot invoke the "reason personal" exception because Clipper is not a party to the litigation. As previously ex-

plained, Lexington is a subrogee of Clipper and may assert Clipper's rights against BG&E to the extent of Lexington's payment under the insurance contract. This fact renders BG&E's argument spurious.

tion of excessive restoration costs. The court noted the property injured need not be an inhabited home or the surrounding land. The property, however, must be suitable and available for a homesite and be held by the owner for that purpose. *Id.* at 470, 147 A.2d 430. *Samson* accords with decisions in other jurisdictions finding "reasons personal" where the landowner holds the property for use as a personal residence. *See Roman Catholic Church of the Archdiocese of New Orleans v. Louisiana Gas Serv. Co.,* 618 So.2d 874, 878–79 (La.1993) (citing cases); *Heninger,* 162 Cal.Rptr. at 109 (permitting restoration costs under "reason personal" exception where plaintiff lived on land and intended to maintain it as it was before damage occurred); *cf. Orndorff v. Christiana Community Builders,* 217 Cal.App.3d 683, 266 Cal.Rptr. 193, 196 (1990) ("all that is required is some personal use by [the landowner] and a bona fide desire to repair or restore").

■ Mr. Poloway's intentions do not, as a matter of law, constitute a valid "reason personal" permitting recovery of disproportionate restoration costs. Neither Clipper nor Poloway used the land as a residence, and the land was held for commercial, not personal, purposes. Mr. Poloway's desire to convert the Clipper complex to a sound stage and studio does not constitute personal or residential use, but rather a vision for a future business use of the Clipper premises. This finding, however, does not prevent Lexington from introducing evidence at trial to demonstrate a valid "reason personal".

### IV.

Based upon the foregoing analysis, the Court holds that if Lexington prevails in this case, it may recover a maximum damage award of $1,425,000 for the destroyed buildings, and $198,188 for loss of rental income. The Court further holds that, under Maryland law, Lexington may elect between diminution in value of the Clipper property and the cost of its restoration as the measure of damages should Lexington prevail. The Court must await the jury's findings to determine if the restoration costs sought by Lex-

ington are disproportionate to the property's diminution in value as a matter of law.